## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| **ROSE WONG, et al.,** ) | |
| ) | **Case No. 1:06-CV-2376** |
| ) | |
| ) | **JUDGE ANN ALDRICH** |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | |
| ) | |
| **PARTYGAMING LTD., et al.,** ) | **MEMORANDUM AND ORDER** |
| ) | |
| **Defendants.** ) | |

Before the court is defendants Partygaming LTD and Partygaming PLC's (collectively "PartyGaming") motion to set aside an entry of default. (Doc. No. 15.) For the reasons set forth below, the court grants the motion and sets aside the entry of default.

**I.   Background**

PartyGaming is a publicly traded corporation on the London stock exchange, hosting thousands of individuals in online poker games each day.

On September 29, 2006, plaintiffs Rose Wong and Patrick Gibson (collectively "plaintiffs") filed their complaint on behalf of themselves and others similarly situated, alleging that PartyGaming represented that it had a "Collusion Prevention System," when in fact it had failed to take certain easy measures to prevent collusion among online players. Based upon this conduct, plaintiffs originally claimed that PartyGaming had violated the Ohio Consumer Sales Practices Act and other similar state consumer protection acts, breached contracts, and engaged in negligent, reckless, or intentional misrepresentation.

Because PartyGaming is located in Gibraltar, plaintiffs served their complaint via DHL. The tracking results indicate that someone at Partygaming LTD signed for the documents on October 25,

2006 (Doc. No. 4), and that someone at Partygaming PLC signed for the documents on October 23, 2006 (Doc. No. 5). To date, Partygaming has not filed an answer or otherwise appeared in this lawsuit apart from the instant motion.

On January 19, 2007, plaintiffs filed their unopposed motion for class certification of a nationwide class. The court found that the putative nationwide class did not meet the typicality requirement of Rule 23(a), but that a class of PartyGaming customers in Ohio did satisfy that requirement. However, the court found that with the class limited to Ohio customers, the claim might not meet the jurisdictional minimum of $5,000,000 for class actions. Accordingly, the court provisionally certified an Ohio class and directed plaintiffs to file an amended complaint by March 30, 2007 addressing whether subject matter jurisdiction still existed given the narrower class.

Plaintiffs filed their first amended complaint on March 30, 2007, limiting the first count to a violation of the Ohio Consumer Sales Practices Act. As to the jurisdictional matter, plaintiffs stated that they "are class members and citizens of Ohio, PartyGaming is a citizen of a foreign country, and the amount in controversy, solely concerning Ohio citizens, exceeds $5 million." (First Am. Compl. ¶4.) Although plaintiffs changed the wording of their complaint to account for the narrower class, they did not otherwise address subject matter jurisdiction as ordered by the court. Accordingly, questions remain regarding whether subject matter jurisdiction exists.

Plaintiffs subsequently filed their second amended complaint on July 31, 2007, changing their class allegation to include 23 states, but omitting Ohio. Plaintiffs are residents of Ohio and previously pled that venue was proper because the events giving rise to the complaint occurred in Ohio. However, conspicuously absent from the second amended complaint were references in the class allegation to Ohio and Ohio law. As a result, questions of venue now exist.

2

Following the filing of their second amended complaint, plaintiffs filed their second motion for class certification as to the 23 states listed in the second amended complaint. It is not clear whether plaintiffs are seeking to amend the first class, given that it was only provisionally certified, or to certify a wholly separate class. This motion remains pending.

Plaintiffs then filed a motion for default judgment on January 30, 2008. The court filed an entry of default the next day. Plaintiffs subsequently filed a motion for damages on February 8, 2008. On March 3, 2008, PartyGaming filed the instant motion to set aside the entry of default.

## II.  Discussion

As a preliminary matter, if service is not proper, a court must set aside an entry of default. *O.J. Distrib., Inc. v. Hornell Brewing Co.*, 340 F.3d 345, 353 (6th. Cir. 2003). However, if service is proper, then pursuant to Rule 55(c), "[t]he court may set aside an entry of default for good cause." Fed. R. Civ. P. 55(c). For the reasons set forth below, the court finds that service was proper, but will nonetheless set aside the entry of default for good cause.

### A.  *Service of Process*

Service of process from the United States to Gibraltar is governed by The Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, Hague Service Convention, Nov. 15, 1965, 20 U.S. T. 361, T. I. A. S. No. 6638 (the "Hague Service Convention"). The Hague Service Convention sought "to provide a simpler way to serve process abroad, to assure that defendants sued in foreign jurisdictions would receive actual and timely notice of suit, and to facilitate proof of service abroad." *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 698 (1988). Both the United States and the United Kingdom are member states, and the United Kingdom has expressly extended the Hague Service

3

Convention to Gibraltar. U.S. Department of State, Hague Convention on Service Abroad, http://travel.state.gov/law/info/judicial/judicial_686.html (last visited May 5, 2008).

The Hague Service Convention requires member states "to establish a central authority to receive requests for service of documents from other countries." *Volkswagenwerk*, 486 U.S. at 698. However, states may also consent to other methods of service. *Id*. at 699. Specifically, Article 10 states:

> Provided the State of destination does not object, the present Convention shall not interfere with –
>
> a) the freedom to send judicial documents, by postal channels, directly to persons abroad,
>
> b) the freedom of judicial officers, officials or other competent persons of the State of origin to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination,
>
> c) the freedom of any person interested in a judicial proceeding to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination.

Hague Service Convention, Article 10. The United Kingdom objects to Article 10(b) and (c), but not to 10(a), meaning that judicial documents may be sent to the United Kingdom, and by extension, to Gibraltar. Hague Conference on Private International Law, United Kingdom - Central Authority & Practical Information, http://hcch.e-vision.nl/index_en.php?act=authorities.details&aid=278 (last visited May 5, 2008). Further, service by mail is an acceptable means of service under Gibraltar law. European Judicial Network in Civil and Commercial Matters, Service of Documents - Gibraltar, http://ec.europa.eu/civiljustice/serv_doc/serv_doc_gib_en.htm (last visited May 5, 2008).

PartyGaming states that "no court in this Circuit (or elsewhere) has opined on whether mailing of *an initial complaint* to Gibraltar satisfies a party's obligations under the Hague

4

Convention." (Doc. No. 29 at 4, emphasis added.) However, a court in this circuit has found that a complaint mailed to the United Kingdom "complie[s] with both the Hague Convention and the law of the United Kingdom." *Thomas & Thomas Rodmakers, Inc. v. Sharpe's, Inc.*, No. 1:06-cv-421, 2007 U.S. Dist. LEXIS 25594, at *10 (S.D. Ohio Apr. 5, 2007). Thus by extension, a complaint may be mailed from the United States to Gibraltar.

Here, PartyGaming states that "[a]lthough [it] *undeniably* possessed knowledge of this lawsuit, it was never properly served with the complaint." (Doc. No. 15-2 at 14, emphasis added.) However, plaintiffs sent a copy of the complaint to each defendant via DHL, a proper method of service under the Hague Service Convention, and provided the court with proof of service. Accordingly, the court finds that service was proper.

### B.     Good Cause

In considering whether to exercise its discretion to set aside an entry of default for good cause, a district court considers "whether (1) the default was willful, (2) a set-aside would prejudice the plaintiff, and (3) the alleged defense was meritorious." *United Coin Meter Co. v. Seaboard Coastline R.R.*, 705 F.2d 839, 844 (6th Cir. 1983) (citations omitted) (quoting *Keegel v. Key West & Caribbean Trading Co.*, 627 F.2d 372, 373 (D.C. Cir. 1980)). In interpreting the *United Coin Meter* test, the Sixth Circuit has stated that "a district court abuses its discretion in denying a motion to set aside an entry of default when two of the three factors have been demonstrated by the defendant: the defendant had a meritorious defense and no prejudice would result to the plaintiff if the matter were to go forward." *O.J. Distrib.*, 340 F.3d at 353 (citing *Shepard Claims Servs., Inc. v. William Darrah & Assoc.*, 796 F.2d 190, 193-94 (6th Cir. 1986)).

A defendant has a meritorious defense if the defendant states a "defense good at law," regardless of the likelihood that the defendant would succeed on the defense. *United Coin Meter*, 705 F.2d at 845. Further, a defense is meritorious "if it contains even a hint of a suggestion which, proven at trial, would constitute a complete defense. The key consideration is to determine whether there is some possibility that the outcome of the suit after a full trial will be contrary to the result achieved by the default." *INVST Fin. Group v. Chem-Nuclear Sys., Inc.*, 815 F.2d 391, 399 (6th Cir. 1987) (quotations and citations omitted). In considering whether the defendant has such a defense, the court "must resolve all ambiguous or disputed facts in the light most favorable to the defendant." *Berthelsen v. Kane*, 907 F.2d 617, 621 (6th Cir. 1990).

As to prejudice, delay alone is an insufficient basis for showing that a plaintiff will be prejudiced. *Id*. at 620. Rather, for delay to be prejudicial, it must make discovery more difficult, result in lost evidence, or make it easier for fraud or collusion to take place. *INVST Fin. Group*, 815 F.2d at 398.

Finally, as an additional consideration, the court notes that prior to establishing the *United Coin Meter* test, the Sixth Circuit declared that "matters involving large sums of money should not be determined by default judgments if it can be reasonably avoided." *Rooks v. American Brass Co.*, 263 F.2d 166, 169 (6th. Cir. 1959). "[W]hen the defaulting party comes forward expressing a willingness to participate in the suit and offering a defense that appears meritorious, the entry of a judgment by default in those cases almost would constitute a forfeiture and the court may allow relief from the judgment to avoid that consequence." 10A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 2693 (3d. ed. 1998).

6

Defendants have advanced numerous defenses: that Gibraltar is the proper forum, that plaintiffs offer no evidence of collusion or other unfair play, that plaintiffs offer no evidence that they were harmed as a result of PartyGaming's alleged activities, that the class was improperly certified, and that plaintiffs are misconstruing PartyGaming's stated policies. Some, if not all, of these alleged defenses provide at least a "hint of suggestion" of a complete defense if proven at trial, especially when construed in the light most favorable to PartyGaming. Therefore, PartyGaming has established at least one meritorious defense for these purposes.

Turning next to the prejudice element, plaintiffs state that they will be prejudiced because discovery will be more difficult, witnesses' memories will fade, and there will be a greater opportunity for fraud and fraudulent dissipation of PartyGaming's assets. However, plaintiffs fail to provide any support for these bare allegations.

Further, as noted above, matters involving large sums of money should not be determined by default, if possible. *Rooks*, 263 F.2d at 169. In *Rooks*, decided in 1959, the Sixth Circuit found $60,000 to be a sum large enough to weigh against a default judgment. *Id*. Here, plaintiffs request just less than $600 million in damages. Without resorting to a discussion of inflation, it is enough to find that plaintiffs' figure qualifies as a large sum in 2008.

Accordingly, the court will set aside the entry of default because, regardless of whether PartyGaming's conduct was culpable, it has presented a meritorious defense and plaintiffs will not be prejudiced if the matter were to go forward. To do otherwise would be an abuse of discretion.

**III.    Conclusion**

For the reasons set forth above, the court grants PartyGaming's motion to set aside the entry of default. (Doc. No. 15.) Accordingly, plaintiffs' motions for default judgment (Doc. No. 12) and for damages (Doc. No. 14) are denied.

The court notes, however, that plaintiffs' first amended complaint does not adequately address questions of subject matter jurisdiction, and that plaintiffs' second amended complaint raises questions of venue. Further, the court observes that the second amended complaint, as filed, replaces the first amended complaint, resulting in a single class that includes 23 states, none of which is Ohio. Accordingly, plaintiffs are ordered to file a fourth amended complaint addressing these issues by May 23, 2008. PartyGaming must serve its answer, or otherwise present a motion pursuant to Rule 12, within 20 days of being served with the fourth amended complaint. In light of this schedule, responsive briefing on plaintiffs' second motion for class certification (Doc. No. 11) is stayed pending resolution of venue and jurisdictional issues.

IT IS SO ORDERED.

      /s/ *Ann Aldrich*
ANN ALDRICH
UNITED STATES DISTRICT JUDGE

**Dated: May 6, 2008**