UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ROSE WONG, et al., ) | |
| ) | Case No. 1:06-CV-02376 |
| Plaintiffs, ) | |
| ) | |
| v. ) | JUDGE ANN ALDRICH |
| ) | |
| PARTYGAMING LTD., et al., ) | |
| ) | |
| Defendants. ) | |
| ) | MEMORANDUM AND ORDER |
| ) | |

Before this court are defendants Partygaming PLC's and Partygaming LTD's (collectively "PartyGaming") motion to dismiss for improper venue and for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(3) and 12(b)(6), respectively [Doc. No. 33]. For the reasons set forth below, this court denies defendants' motion as moot and dismisses the action under the doctrine of forum non conveniens.

**I.    Factual Background**

Defendant PartyGaming PLC is a Gibraltar corporation with its principal place of business in Gibraltar. Although regulated by the government of Gibraltar, its shares are publicly traded on the London stock exchange. It is the parent company of defendant PartyGaming LTD, a dormant subsidiary. PartyGaming hosts thousands of individuals in real-money online poker games each day on its website, www.partypoker.com (the "website").

On September 29, 2006, plaintiffs Rose Wong and Patrick Gibson (collectively "plaintiffs") filed in this court their complaint on behalf of themselves and others similarly situated. Plaintiffs are Ohio

citizens who each created an account on the website. Plaintiffs claim that they lost money while playing on the website because other players with multiple accounts colluded against them during their online play. Plaintiffs claim that PartyGaming knew of this collusion problem but did nothing to prevent it.

In creating an account, each plaintiff agreed to the website's terms and conditions of use ("Terms and Conditions"), one of which constituted a forum selection clause:

> This Agreement shall be governed by and construed in accordance with the laws of Gibraltar without giving effect to conflicts of laws principles. You irrevocably agree to submit, for the benefit of the Company, to the exclusive jurisdiction of the courts of Gibraltar for settlement of any disputes or matters arising out of or concerning this Agreement or its enforceability. If any part of this Agreement is found to be invalid, illegal or unenforceable in any respect, it will not affect the validity of the remainder of the Agreement, which shall remain valid and enforceable according to its terms.

Plaintiffs acknowledge that they agreed to the forum selection clause. Plaintiffs, however, claim that PartyGaming, through the website, made three false representations that induced them to agree to the Terms and Conditions, including the Gibraltar forum selection clause.

First, plaintiffs allege that the website represented that PartyGaming had eliminated player collusion when it stated the following (the "Collusion Prevention Statement"):

> Collusion happens between two or more players. It can be defined as strategy intended to take an undue advantage over the other players at the table. We have developed a "Collusion Prevention System" to detect such players and ban them from the site. The sophisticated systems are developed on a high level technological platform and work based on a combined set of algorithms, permutations and combinations. We have further modified our systems to filter the players who collude and identify them so that the appropriate action can be taken against them.

Second, plaintiffs allege that the website represented that PartyGaming had eliminated player collusion by prohibiting and eliminating multiple accounts held by individual players when it stated the following (the "Single Account Statement"): "Players are allowed only one account per player and our system performs random security checks and other log-file reviews to maintain system integrity and fairness

at the tables. If we find any players participating in collusion or deceptive practices, we will close their accounts immediately." Finally, plaintiffs allege that the website represented that PartyGaming protects minors and addicted gamblers when it stated the following (the "Responsible Advertising Statement"):

> We see online gambling as a legitimate form of entertainment that is enjoyed by millions of adults worldwide. However, we also realize that there may be players who seek to play that are underage or who have let gambling take too large a role in their life. We advertise and operate responsibly in order to protect minors, and we assist problem gamblers to identify their addiction and seek counseling. For more information, see game fairness and responsible gaming.

On June 12, 2008, PartyGaming filed a motion to dismiss for improper venue [Doc. No. 33]. On August 13, 2008, the plaintiffs filed a brief in opposition [Doc. No. 35]. On September 10, 2008, PartyGaming filed a reply [Doc. No. 38].

**II.    Discussion**

   *A.    Forum Selection Clause*

The plaintiffs argue that the forum selection clause is unenforceable because their consent to the clause was obtained by "negligent, reckless, and fraudulent representations" [Doc. No. 1]. The validity of a forum selection clause is determined pursuant to federal law, *Kerobo v. Southwestern Clean Fuels, Corp.*, 285 F.3d 531, 534 (2002), and forum selection clauses are presumed to be valid. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29-30 (1988); *M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 12 (1972). A forum selection clause should be enforced unless (1) it was obtained by fraud, duress, abuse of economic power, or other unconscionable means; (2) the chosen forum would be closed to the suit or would not handle it effectively or fairly; or (3) the transferee forum would be so seriously inconvenient that to require the plaintiff to bring suit there would be unjust. *Security Watch Inc. v.*

*Sentinel Sys., Inc.*, 176 F.3d 369, 374-75 (6th Cir. 1999).  For a forum selection clause to be unenforceable due to fraud, the inclusion of the forum selection clause itself must be the result of fraud:

> [U]nless there is a showing that the alleged fraud or misrepresentation induced the party opposing the forum selection clause to *agree to the inclusion of that clause* in the contract, a general claim of fraud or misrepresentation as to the entire contract does not affect the validity of the forum selection clause.

*Preferred Capital, Inc. v. Aetna Maint., Inc.*, 207 F. App'x. 562, 564 (6th Cir. 2006) (emphasis in original).

In their complaint, plaintiffs have primarily argued that the forum selection clause should be disregarded because it was obtained by fraud.[1]  The plaintiffs claim that PartyGaming made three misrepresentations that induced them to accept the Terms and Conditions and enter into the contract: The plaintiffs claim that PartyGaming falsely represented that no collusion takes place on www.partypoker.com, that no players have multiple accounts, and that PartyGaming protects minors and gambling addicts.

The plaintiffs, however, misrepresent the disclosures that were made by PartyGaming.  If anything, the statements made by PartyGaming indicate that collusion, multiple accounts, and problem gaming are, in fact, problems on the website that the company is trying to resolve.  In defining the term "collusion," the Collusion Prevention Statement clearly indicates that "[c]ollusion happens" in a manner that is cautionary as well as descriptive.  The Collusion Prevention Statement goes on to explain that PartyGaming's software is designed to detect collusion so that those players can be banned.  If anything, this statement indicates that collusion is a problem on the website, not that PartyGaming has eliminated all collusion problems on the website.  With regard to the Single Account Statement, PartyGaming did

---

[1] The plaintiffs also argue that Gibraltar law does not recognize class action suits or the right to a civil jury trial.  These arguments are addressed below.

represent that "[p]layers are allowed only one account per player," but it never represented that it is totally impossible for players to have more than one account. The website went on to state that "our system performs random security checks and other log-file reviews to maintain system integrity and fairness at the tables," signifying that collusion by players with multiple accounts is a potential problem on the website. Finally, the plaintiffs claim that the Responsible Advertising Statement is fraudulent without explaining why it misrepresents the truth. Because the plaintiffs do not specifically identify how this statement is fraudulent, this court will not assume that this statement is a misrepresentation sufficient to induce the plaintiffs to agree to the Gibraltar forum selection clause.

Moreover, the plaintiffs have not claimed that the forum selection clause was unknown to them. They were required to and did read the Terms and Conditions before creating an account. The Terms and Conditions began with a notice instructing potential customers to "please read these terms and conditions carefully before accepting this agreement." This notice was conspicuously placed and written in capital letters. Within the Terms and Conditions, the forum selection clause was obvious and clearly labeled under the heading "Governing Law." Its language was forceful: "You *irrevocably* agree to submit, for the benefit of the Company, to the *exclusive* jurisdiction of the courts of Gibraltar for settlement of *any* disputes or matters arising out of or concerning this Agreement or its enforceability" (emphasis added). Because this evidence shows that an act of fraud did not induce the plaintiffs to agree to the forum selection clause, they have failed to meet the burden that they must show for this court to disregard the agreement.

The plaintiffs also argue that enforcing the Gibraltar forum selection clause would contravene Ohio public policies because Gibraltar does not recognize class action suits or the right to a jury trial

in civil suits.[2] A district court, however, "does not have the discretion to hold that because the state public policy prohibits the enforcement of clauses requiring an out-of-state venue, the state policy will be categorically upheld and the clause will not be enforced." *Kerobo*, 285 F.3d at 538.

In sum, this court concludes that the Gibraltar forum selection clause is reasonable for the same reasons stated by the United States Supreme Court in *Carnival Cruise Lines v. Shute*: a forum selection clause reasonably limits the fora where a company engaged in international business can be sued, conserves time and expense by "dispelling confusion as to where suits arising from the contract must be brought and defended," and reduces the price of the services offered to consumers. *See Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593-94 (1991).

### *B.  Dismissal*

In an attempt to enforce the forum selection clause, PartyGaming has moved to dismiss the action pursuant to Rule 12(b)(3). Venue requirements pertinent to Rule 12(b)(3) are found in 28 U.S.C. § 1391, which dictates that venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . ." *See* 28 U.S.C. § 1391. A substantial part of the events giving rise to the plaintiffs' claims occurred in Ohio, because that is where the plaintiffs claimed to have created accounts, gambled online, been colluded against, and lost money. Venue, therefore, properly lies in Ohio pursuant to the statute.

Because venue properly lies in Ohio, dismissal of the case pursuant to Rule 12(b)(3) for improper venue is not the appropriate mechanism for enforcing a forum selection clause.[3] *Kerobo*, 285 F.3d at 536. Instead, international forum selection clauses have been enforced in the Sixth Circuit under

---

[2] These arguments are addressed in more detail *infra*, at p. 9.

[3] Because Rule 12(b)(3) is not the proper mechanism for enforcing a forum selection clause, the court need not address whether PartyGaming waived its right to challenge venue under the Federal Rules of Civil Procedure.

the doctrine of forum non conveniens. *See Heinz v. Grand Circle Travel*, 329 F.Supp.2d 896, 901 (W.D. Ky. 2004).

The doctrine of "forum non conveniens is simply that a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507 (1947). The doctrine is a "supervening venue provision, permitting displacement of the ordinary rules of venue when, in light of certain conditions, the trial court thinks that jurisdiction ought to be declined." *American Dredging Co. v. Miller*, 510 U.S. 443, 453 (1994). As previously stated, the doctrine has been extended to cover disputes involving international forum selection clauses:

> Just as a federal court may decline to exercise its jurisdiction in cases of forum non conveniens, notwithstanding the absence of a specific statute authorizing the dismissal, the court may similarly dismiss on the closely-related grounds that the parties have agreed in advance that some other forum is the more convenient location for resolution of the dispute.

*Licensed Practical Nurses, Technicians & Health Care Workers of N.Y., Inc. v. Ulysses Cruses, Inc.*, 131 F.Supp.2d 393, 407-08 (S.D.N.Y. 2000).

While PartyGaming did not raise the issue of forum non conveniens, the Ninth Circuit found in *Seagal v. Vorderwuhlbecke*, 162 F. App'x 746, 748 (9th Cir. 2006) (citing *Mizokami Bros. of Arizona, Inc. v. Baychem Corp.*, 556 F.2d 975, 977 (9th Cir. 1977)) that, given the wide discretion afforded district courts under the doctrine of forum non conveniens, it may be raised sua sponte. *See also Estate of Thomson v. Toyota Motor Corp. Worldwide*, No. 1:06CV2431, 2007 WL 1795271, at * 3 (N.D. Ohio June 19, 2007) (dismissing case sua sponte based on doctrine of forum non conveniens), *aff'd* No. 07-3813, 2008 WL 2952784 (6th Cir. July 30, 2008). The court agrees and therefore applies forum non conveniens here.

The Supreme Court recently held that a court may exercise its discretion to dismiss a case for

forum non conveniens without deciding the issues of subject matter jurisdiction or personal jurisdiction. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 127 S. Ct. 1184, 1188 (2007).

When applying forum non conveniens, an appropriate alternative forum must first be established. *Stewart v. Dow Chemical Corp.*, 865 F.2d 103, 106 (6th Cir. 1989). Next the court must consider the private interests of the litigants and factors of public interest in determining the relative convenience of the forum chosen by the plaintiff as opposed to the available alternative forum. *Id.* In evaluating these factors, no one factor is determinative. *Id.* at 105. The "central focus of the forum non conveniens inquiry is convenience . . . ." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 249 (1981).

*1. Appropriate alternative forum*

Gibraltar is an appropriate alternative forum because PartyGaming is a Gibraltar corporation with its principal place of business in Gibraltar. According to a declaration submitted by PartyGaming, Gibralter's law and court system are based on the English tradition. Moreover, Gibraltar can provide adequate relief to the plaintiffs because it recognizes and provides redress for causes of action similar to those pled by the plaintiffs [Doc. No. 37].

*2. Private interest factors*

Private interests include the relative ease of access to sources of proof, availability of compulsory process for attendance of unwilling witnesses, the cost of obtaining attendance of unwilling witnesses, the possibility of viewing the scene if needed, and other practical problems that make trying a case easy, expeditious, and inexpensive. *Stewart*, 865 F.2d at 106. The court must also consider problems of enforcing a judgment if one is obtained and relative advantages and obstacles to a fair trial, if any. *Id.*

Private interest factors weigh in favor of Gibraltar's adjudication of this case. Gibraltar is the headquarters and principal place of business of PartyGaming. Documents and witnesses related to a

website, its creation, and its maintenance are usually found at a company's principal place of business. While normally PartyGaming would need to provide enough information concerning documents or witnesses to enable the court to balance the parties' interests, in this case, the court acts sua sponte to dismiss because of the clear difficulties in trying a case in a different country from where the business, its documents, and witnesses are likely located. *See Piper*, 454 U.S. at 258.

Moreover, the plaintiffs are likely to experience few obstacles to a fair trial in Gibraltar. Gibraltar law is based on the English common law and has a similar court system to that found in England. Moreover, PartyGaming has submitted evidence that Gibraltar law has rules that recognize claims brought by representatives of a class of similarly situated persons [Doc. No. 37]. The plaintiffs claim that Gibraltar does not allow jury trials in civil cases. The Sixth Circuit, however, has upheld forum selection clauses requiring litigation in countries that do not provide a traditional right to a trial by jury in civil cases. *See, e.g., Gen. Elec. Co. v. G. Siempelkamp GmbH & Co.*, 29 F.3d 1095, 1099 (6th Cir. 1994) (upholding German forum selection clause).

A forum selection clause is a private interest factor that "is one of the factors to consider in this calculus. Such a clause 'should receive neither dispositive consideration . . . nor no consideration.'" *Kerobo*, 285 F.3d at 537-38 (internal citations omitted). Here, it has been established that the parties did agree to an enforceable forum selection clause designating Gibraltar as the proper venue for litigation. In sum, the private interest factors weigh in favor of dismissal.

*3. Public interest factors*

Relevant public interest factors include administrative difficulties of courts with congested dockets, the burden of jury duty on people of a community having no connection with the litigation, desirability of holding a trial near those most affected by it, and the appropriateness of holding a trial

-9-

in a diversity case in a court which is familiar with governing law. *Stewart*, 865 F.2d at 106.

These public interest factors also favor dismissal. The result of this trial may have a great impact on PartyGaming's operations. Other corporations involved in the gaming industry and regulated by the government of Gibraltar are especially likely to be affected, as any outcome might alter the requirements or regulations for gaming companies in that country. Moreover, although American jurors in Ohio would have the benefit of hearing a case regarding their fellow citizens' online recreation, adjudication in the Northern District of Ohio would deprive the courts in Gibraltar of the opportunity to hear a case involving a substantial player in that country's comparatively small economy.

Additionally, it is preferable for a court familiar with the controlling law to hear the case if the controlling law is that of a foreign country. Here, it is clear from the governing law clause that Gibraltar law should be applied. The Supreme Court has held that the need to apply foreign law favors dismissal by this court and adjudication of the case by the foreign court familiar with the applicable law. *Piper*, 454 U.S. at 260. The Sixth Circuit has followed accordingly, stating: "This Court's unfamiliarity with the foreign law which will govern these actions supports dismissal on the basis of *forum non conveniens*." *Dowling v. Richardson-Merrell, Inc.*, 727 F.2d 608, 615 (6th Cir. 1984). "While ordinarily a plaintiff will not be deprived of his choice of suing in his home forum, 'the ultimate inquiry is where trial will best serve the convenience of the parties and the ends of justice.'" *Id.* at 613 (quoting *Koster v. Lumbermens Mutual Casualty Co.*, 330 U.S. 518, 527 (1947)). On balance, the public interest factors also weigh in favor of This dismissal for forum non conveniens.

In this case, application of foreign law, as well as a number of public and private factors, leads to the conclusion that Gibraltar is a more appropriate forum in which to hear the case.

### III. Conclusion

For the foregoing reasons, PartyGaming's motion to dismiss for improper venue and failure to state a claim are denied as moot, but the action against PartyGaming is nevertheless dismissed for forum non conveniens.

This order is final and appealable.


IT IS SO ORDERED.

                                                  s/Ann Aldrich

                                                  ANN ALDRICH
                                                  UNITED STATES DISTRICT JUDGE

**Dated: September 30, 2008**